UNITED STATES of America, Plaintiff-Appellee,

v.

Kenneth J. ZIMPLE, Defendant-Appellant.

No. 14023.

United States Court of Appeals Seventh Circuit.

June 3, 1963.

Thomas P. Doherty, Milwaukee, Wis., for appellant.

Louis W. Staudenmaier, Jr., Asst. U. S. Atty., James B. Brennan, U. S. Atty., Milwaukee, Wis., for appellee.

Before SCHNACKENBERG, KILEY and SWYGERT, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Kenneth J. Zimple, defendant, has appealed from a judgment of the district court sentencing him to five years' confinement, based upon a finding of guilty that he violated 18 U.S.C.A. § 1708, by stealing a letter from a mail receptacle.

Both in the district court and here, defendant was represented by court-appointed counsel.[1]

From evidence introduced, it appears that Milwaukee policemen Patten and Zellmer, while on patrol duty on April 19, 1962, at 10:30 A. M., observed defendant enter an apartment on the corner of 26th and Wells Streets; that a minute or so later he came out and entered the next apartment and there stayed a short time. The officers approached him, identified themselves, stated that there had been recent burglaries and they were checking the area for suspects. They asked why he was entering the apartments and he stated that he was looking for a friend supposedly living some place on Wells, and he was checking the mailboxes to find his name, which was Joseph Odapeck. He said that he had not seen him since they were in the army.

They asked where he had been during the day and he said that he had worked that night, and that when he got off of work he decided to look this friend of his up, and that he was merely in the apartments to see if he could find his name on a mailbox.

When placed on the special burglary detail, Patten and his partner were advised that at least 10 to 20 burglaries had taken place in this vicinity on West Wells Street, mostly in new apartments.

Two detectives were then called and, following questioning by them, Officers Patten and Zellmer placed defendant under arrest on suspicion of burglary. He was then searched. Only three uncanceled letters were found in his jacket pocket.

After being taken to the Safety Building and, as defendant was being taken down a corridor, he walked between two officers and was followed by officer Patten. Defendant was not handcuffed. Patten observed an envelope drop from defendant to the floor and picked it up. The envelope which had been torn open, and a government check inside (known as exhibits 1 and 1A) were offered in evidence over the objection of defense counsel, who moved that "the check be suppressed as evidence". The motion was later granted. This was a "picture-type" envelope which showed the payee's name and an address at 2445 West Wisconsin Avenue. It was stipulated that this envelope and the check contained therein had been deposited in the United States mail, that delivery was made to the letterbox of payee, Marilyn A. Lau, and that said payee did not authorize the defendant to take or to hold the said exhibits 1 and 1A.

Defendant was questioned from about 11:15 to 12:15 o'clock. He asked to see a postal inspector and stated that he had nothing to tell the police officers about burglaries, but that there was also some mail involved in this matter and that he would talk only to the federal authorities about the mail. That he so stated is admitted in defendant's brief in this court. According to Postal Inspector Cato's testimony, he talked to defendant and told him that he would like "for him to tell me his story about it and to tell the truth and, after a brief discussion of the details of it, he did so * * *." According to Cato, plaintiff's exhibit 3 was written and signed by defendant himself, and sworn to before Cato as a postal inspector. In substance, it is a detailed statement that he took

---

1. While defense counsel failed to sign either of the briefs which he filed in this court, he appeared and argued the case orally in this court.

four pieces of mail from mailboxes. It relates that a letter he saw sticking out of a mailbox in the 2400 block on West Wisconsin Avenue he took, opened and saw a government check inside; that he placed this inside his shirt and later in the morning, after being arrested by police officers, he tried to get rid of the check by throwing it on the floor of the Safety Building. He also took three letters from behind a mailbox in the 2500 block on said street and they were in his pocket when he was arrested.

The proceedings in district court were on an information filed May 7, 1962, followed by a plea of not guilty and a waiver of jury trial.

Defendant offered no evidence at the trial. He moved to suppress plaintiff's exhibit 3.

The district court found him guilty.

In this court it is defendant's contention that plaintiff's exhibit 3 is the result of an illegal arrest and the product of an illegal seizure in violation of the Fourth Amendment and should have been suppressed, and that there was not sufficient evidence to prove the corpus delicti independently of the confession. With unusual candor, during oral argument, his counsel succinctly informed the court that under federal law, while it may be difficult to commit a perfect crime, it is much more difficult for law officers to make a lawful arrest of the perpetrator. We proceed to determine whether in this case this challenge has been met by the government.

As to defendant's contention that exhibit 3 was the result of an illegal arrest and an illegal seizure, and, therefore, should have been suppressed, his counsel argues that until he was confronted with incriminating physical evidence of a crime, exhibits 1 and 1A, he consistently maintained his innocence of any wrongdoing. It is said: "Only, when faced with the illegally obtained evidence, did Mr. Zimple provide the Federal agent with a signed statement".

■ 1. The premise that exhibits 1 and 1A were illegally obtained evidence is not supported by the record. They were not seized from defendant. He had been searched and they had not been found thereby. When he freed himself from possession of them they fell into the hands of an alert police officer who picked them up from the Safety Building floor where they had been abandoned in a surreptitious attempt by defendant to part with possession of them. These exhibits were not the product of an illegal seizure but were papers discarded by defendant. Whether put in a litter container or on the floor was immaterial. We find it unnecessary to consider the government's contention that the district court erred in suppressing exhibits 1 and 1A.

■ 2. Moreover, we are convinced that his arrest was not illegal. It is well to remember that the officers, when they arrested Zimple, were not required by law to know facts sufficient to prove his guilt. Rather they were required to have knowledge of facts sufficient to show probable cause for arrest or search. Draper v. United States, 358 U.S. 307, 311, 79 S.Ct. 329, 3 L.Ed.2d 327.

In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, it is said:

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.

" 'The substance of all the definitions' of probable cause 'is a reasonable ground for belief of guilt.' McCarthy v. De Armit, 99 Pa. 63, 69, quoted with approval in the Carroll opinion. 267 U.S. at 161. And this 'means less than evidence which would justify condemnation' or conviction, as Marshall, C. J., said for the Court more than a century ago in Locke v. United States, 7 Cranch

339, 348 [3 L.Ed. 364]. Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 [45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790].

"These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. * * *"

In the case at bar, officers Patten and Zellmer were patrolling a neighborhood where, they had been informed by their superiors, burglaries were being committed. They saw a man entering the front entrances of apartment buildings where in each case he remained about a minute. When they asked him what he was doing, he stated that he was checking mailboxes for the purpose of locating a man whom he had known in the army. Although he stated that he had worked that night, no explanation was made by him as to why he was not sleeping or otherwise resting from his night work. The record does not show and we have no way of knowing his physical appearance or conduct evidencing candor or evasiveness in answering the officers' questions. His entire demeanor however was visible to them. They did not act summarily by placing him under arrest, but they waited until they had called for a detective squad which questioned defendant further. It was only after all this had occurred and the defendant had remained under observation of the officers that they arrested him. We believe that the officers at the time of arrest had knowledge supporting a man of reasonable caution in the belief that the defendant had committed burglaries. See Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, where Chief Justice Taft delivered the opinion of the court. That this is the law is fortunate, in view of the practical consideration that officers at the scene of arrest are required to make an immediate decision on the totality of the circumstances there confronting them and a failure to act and the disappearance of the suspect before the discovery of his crime would probably render the matter moot.

We hold that the arrest of defendant was lawful.

3. We further hold that defendant's attack upon the court's action in denying suppression of his written confession [exhibit 3] must be rejected. In addition to the circumstances pertaining to his arrest, as we have pointed out the evidence shows that defendant asked that a postal inspector interview him and that he voluntarily executed the confession in his own handwriting and signed and swore to it before the postal inspector.

The factual situation involved in Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, relied upon by defendant, is significantly different from that in the case at bar. We have in this case no establishment of primary illegality, resulting from an unlawful arrest, as the court found in Wong Sun, 371 U.S. at 488, 83 S.Ct. at 417, and no confession "come at by exploitation of that illegality". On the other hand, as was said in Nardone v. United States, 308 U.S. 338, at 341, 60 S.Ct. 266, at 267, 84 L.Ed. 307:

"* * * Sophisticated argument may prove a causal connection between information obtained through illicit wire-tapping and the Government's proof. As a matter of good sense, however, such connection may

have become so attenuated as to dissipate the taint. * * * This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin."

While we believe that the confession of defendant had an independent origin in his request for an interview with the postal inspector, we do not base our holding entirely upon that ground. We prefer to base it upon the broader grounds herein set forth, which include also the lawfulness of the arrest.

█ 4. Finally, defendant contends that the government failed to prove the corpus delicti by substantial evidence "independent [sic]" of defendant's signed statement. He brushes aside the stipulated evidence, including that of Marilyn A. Lau, to which we have alluded. He pursues his argument by insisting that this stipulated testimony does not exclude the possibility "that the check was lost following its delivery, or that the payee authorized some other party to take or hold it, said other party then legitimately giving the check to Mr. Zimple."

We are not convinced that the government, in sustaining the burden of proof of the corpus delicti, was required to offer evidence negativing the existence of conceivable inferences which might strip proven acts of their apparent criminal aspects.

Both in the trial court and here, defendant had the services of Thomas P. Doherty, Esq., of the Milwaukee, Wisconsin bar. We express our appreciation for his efforts.

For the reasons set forth herein, we affirm the judgment from which this appeal was taken.

Judgment affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent. In my opinion the District Court did not err in suppressing the envelope and check [1] because I agree with the District Court that there was no probable cause for Zimple's arrest. He was arrested when the officers stopped him and questioned him in the first instance. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed. 2d 134 (1959). This event must be viewed at that time, not after he was questioned nor after evidence of guilt was found. 361 U.S. at 104, 80 S.Ct. at 172. When he was stopped, the officers had information about burglaries, not mail thefts. Seeing Zimple enter an apartment building and "a minute or so later" come out and enter a second apartment building where he left "after about a minute" is not probable cause for arresting him to question him about burglaries. Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

Because Zimple was unlawfully arrested, I think the District Court erred in admitting his confession into evidence to supply the link missing in the chain of evidence against him. The confession was induced by confronting Zimple with the envelope and check which were abandoned by him in the police station in fear of further searching. Wong Sun v. United States, 371 U.S. 471, 486, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The envelope and check in the hands of the police at the station were tainted by the unlawful arrest, and without their use Zimple may not have "volunteered" to confess. 371 U.S. at 485, 488, 83 S.Ct. at 416, 417. The fact that he "volunteered" is irrelevant under the circumstances of this case.

I would reverse.

---

1. To support the conviction, the Government-appellee claims error in that ruling of the District Court. Its right to do so is not challenged.