Charles DeWitt **WHITESIDE**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 17854.

United States Court of Appeals
Eighth Circuit.

June 14, 1965.

Rehearing Denied July 9, 1965.

Herbert Wolkowitz, St. Louis, Mo., made argument for appellant and filed brief.

Stephen H. Gilmore, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed brief with Richard D. Fitz-Gibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VOGEL, MATTHES and RIDGE, Circuit Judges.

MATTHES, Circuit Judge.

Title 18 U.S.C.A. § 1708 makes it unlawful for any person to have in his possession "any letter, * * * or mail, or any article or thing contained therein * * * " which has been stolen or abstracted from the mail, knowing the same to have been stolen, taken or abstracted. Title 18 U.S.C.A. § 495 provides that whoever utters or publishes as true any false, forged, altered, or counterfeited writing, with intent to defraud the United States, knowing the same to be false, altered, forged or counterfeited shall be guilty of an offense and subject to the penalty prescribed in that section.

In a two-count indictment filed August 19, 1964, appellant was charged with violating the foregoing statutes. Count One alleged that on or about the 7th day of May, 1964, appellant did unlawfully have in his possession a certain United States Treasury check in the sum of $1,242 which had been stolen from the United States mail and that at the time appellant knew the same to have been stolen. Count Two alleged that on or about May 7, 1964, appellant did utter and publish as true a falsely altered and forged writing, namely, the same United States Treasury check described in the first count of the indictment and that at the time appellant knew the check had been falsely altered and forged.

A jury found appellant guilty of both offenses and he was sentenced by Judge Harper to three years imprisonment for each offense, the sentences to run concurrently. From the judgment of con-

viction the case was brought here by appeal.

Appellant filed a motion for judgment of acquittal at the close of all of the evidence. He now contends that the court erred in denying the motion and thus he challenges the sufficiency of the evidence to make a submissible case. More precisely, he contends (a) that there was no evidence to show that he had possession of the United States Treasury check on or about the 7th day of May, 1964; (b) that the evidence failed to prove that the Treasury check was mailed, and (c) that the evidence likewise failed to establish that the check had been stolen from the mail.

In resolving the question whether a submissible case was made, we view the evidence in the light most favorable to the Government, the prevailing party, and accord to the Government the benefit of all inferences that may reasonably be drawn from the proven facts. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Isaacs v. United States, 301 F.2d 706, 726, 727 (8 Cir. 1962), cert. denied 371 U.S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962); Harding v. United States, 337 F.2d 254, 256 (8 Cir. 1964).

The uncontradicted evidence established these pertinent facts: On May 6, 1964, Treasury check No. 89,103,152 was issued in Kansas City, Missouri, payable to the order of "Emery White, 3718 Cook Av. Apt. D, St. Louis, Missouri, 63113," in the amount of $1,242.[1] The records of the Regional Disbursing Office of the United States Treasury, Kansas City, Missouri, which were properly identified and satisfied all requirements for admission into evidence, disclosed that on May 6, 1964, a total of 1,308 Treasury checks, including the one under consideration, were issued, placed in window type envelopes, sent to the United States Post Office and were mailed.

---

1. The name, the address of the payee and the amount had been typed on the face of the check. Also appearing thereon were these abbreviations: "Soc. Sec. Ins."

Emery White, an aged woman, resided at the address shown on the check and she testified that her mail box had been pried open and torn from the hinges some time in May, 1964; that she did not receive the Treasury check, she did not authorize anyone to cash the check; that the endorsement thereon was not in her handwriting and that she did not know appellant.

From the evidence of three employees of Biederman's Furniture Company, a St. Louis firm, it was established that on the night of May 20, 1964, appellant, who is a male, and one Gladys Stamps were in Biederman's "downtown" furniture store. Appellant represented to one of the employees that his name was Emery White; that his companion was Marion White, his wife; and that he resided at 3718 Cook Avenue. He then purchased a dinette outfit and a transistor radio for a total of $164.70. Appellant was in possession of the Treasury check above described; however, the amount thereof had been altered to read $242 instead of $1,242. The check was endorsed "Emery White, 3718 Cook, Apt. D" and was tendered to an employee with the request that $75 thereof be applied on the cost of the articles purchased and that the balance be refunded to him. The credit application was signed Emery White, address 3718 Cook. Eventually the transaction was completed, $75 was applied on the account, and $167 in cash was refunded or paid by Biedermans to appellant.

On June 30, 1964, and during the course of an investigation of the theft of the check, appellant was interrogated by a postal inspector in regard to the matter. As a result of the interview, the following statement was obtained from appellant:

"Now comes Charles DeWitt Whiteside, of lawful age, first being sworn, deposes and says:

" 'That I have been questioned by a postal inspector who told me that I do not have to say anything about what I have done unless I want to;

that I cannot be compelled to give testimony against myself; and that I have the right to receive counsel from an attorney or relatives and friends. I am making this statement of my own free will and no threats or promises have been made to me to induce me to make the statement.

" 'On or about May 7, 1964, Frank Chatwell came to me with a check addressed to Emery White, 3718 Cook Avenue, Apartment D, St. Louis, Missouri, 63113, bearing serial No. 89,103,152, drawn on the Treasurer of the United States at Kansas City, Missouri, and bearing symbol 3101, and in the sum of $1242.00. Chatwell altered this check to read $242.00. Someone unknown to me signed the name of the payee on the back of the check and placed the address under the name. I went to Biederman's downtown store, with Gladys Stamps, where I opened an account. We ordered a dinette set and a small radio. A credit application was made out for me under the name of Emery White. The check was cashed for me, the sum of $75.00 was deducted, and the balance of $167.00 returned to me. I did not sign any checks.' "

On the bottom of the statement appellant personally wrote the following:

" 'I have read this statement and it is true.' Subscribed and sworn to before me this 30th day of June, 1964, at Saint Louis, Missouri. V. D. Nidiffer, Postal Inspector."

■■ Appellant seizes upon the variance between the date the offenses were alleged to have been committed, "on or about May 7, 1964," and the date that the transaction occurred in Biederman's place of business, May 20, 1964, and argues that this discrepancy is fatal to the Government's case. We are not so persuaded. The law is clear. Where, as here, time is not an essential element of the crime, proof that the crime was committed on a day other than that al-

leged, if it be within the period of limitations and before the indictment is laid, is sufficient. Alexander v. United States, 271 F.2d 140, 143 (8 Cir. 1959); Cwach v. United States, 212 F.2d 520, 529 (8 Cir. 1954); Butler v. United States, 197 F.2d 561, 562 (10 Cir. 1952); United States v. Perlstein, 126 F.2d 789, 798 (3 Cir. 1942), cert. denied 316 U.S. 678, 62 S.Ct. 1106, 86 L.Ed. 1752 (1942). The indictment informed appellant fully and correctly of the offenses with which he was charged, he was not misled in making his defense and was in no way prejudiced by the claimed variance.

■ The point is also made that the evidence was insufficient to establish that the check in question was actually transmitted by mail from Kansas City, Missouri to St. Louis, Missouri. Again we disagree. The Regional Disbursing Office of the United States Treasury Department in Kansas City, Missouri maintains accurate records of Treasury checks that are issued. The Regional Disbursing Officer testified that all such checks are mailed. The records of the Kansas City office also disclose the process that is pursued in issuing and in mailing the checks. Approximately three million such checks are issued and mailed each month and, as hereinabove noted, the White check was one of a number totaling 1,308 that were mailed on May 6, 1964. The checks were inserted in envelopes, run through a sealing machine, and placed in a mail pouch, which was delivered to the post office in Kansas City, Missouri. This certainly constituted probative evidence from which the jury could very properly find that the check was in fact mailed. See and compare United States v. Zimple, 318 F.2d 676 (7 Cir. 1963), cert. denied 375 U.S. 868, 84 S.Ct. 128, 11 L.Ed.2d 95 (1963); United States v. Hines, 256 F.2d 561 (2 Cir. 1958).

■ Appellant also challenges the sufficiency of the evidence to prove that appellant knew that the check had been stolen. There was no direct evidence on this issue but beyond question the circumstances fully justified the jury in inferring guilty knowledge. Appellant had gained possession of the check under unusual circumstances; he made false representations to Biedermans in regard to his identity, his address, and the identity and relationship of his woman companion; he forged the endorsement or knew that it had been forged. Guilty knowledge is suggested by all of the foregoing badges of fraud and wrongdoing. The jury was entitled to make common-sense inferences from the proven facts. See and compare United States v. Hines, supra, 256 F.2d at p. 564.

■■ As previously indicated, appellant also contests the sufficiency of the evidence to support the verdict against him on Count Two. Since the sentence upon that count runs concurrently with the sentence on Count One, which we have found sustained by the evidence, we would be justified in declining to consider this contention. Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Johnson v. United States, 329 F.2d 600 (8 Cir. 1964); Gajewski v. United States, 321 F.2d 261 (8 Cir. 1963), cert. denied 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). We have, however, carefully reviewed the evidence in light of appellant's specific complaints and have no hesitancy in concluding that the facts and circumstances viewed in the light most favorable to the Government were adequate to support the verdict on Count Two. The events which occurred in connection with the Biederman transaction provided a factual basis for the finding that appellant uttered the check with intent to defraud the Government, and that he knew the check had been forged and altered. Appellant's after-the-fact trustworthy admissions show beyond doubt that he had actual knowledge of the alteration.

■ Appellant also complains about the introduction of the statement, supra, which was elicited by the postal inspector. Here, the assertion is that "the corpus delicti, and its essential elements, must be proven by substantial evidence, before a confession or other incriminat-

ing statement can be admitted into evidence." We do not believe appellant's legal premise is supported by the pronouncements of the Supreme Court of the United States. In Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L. Ed. 101 (1954), the standard to be applied was considered at some length. The Court discussed the rule set out in Daeche v. United States, 2 Cir., 250 F. 566; Id., 348 U.S. p. 92, 75 S.Ct. p. 164, and also took note of Forte v. United States, 68 App.D.C. 111, 94 F.2d 236, 127 A.L.R. 1120; Id. 348 U.S. p. 93, 75 S.Ct. p. 164, holding that the corroboration must consist of substantial evidence, independent of the accused's extrajudicial statements, which tends to establish the whole of the corpus delicti. Then the Court declared:

> "Whether the differences in quantum and type of independent proof are in principle or of expression is difficult to determine. Each case has its own facts admitted and its own corroborative evidence, which leads to patent individualization of the opinions. However, we think the better rule to be that the corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*. It is necessary, therefore, to require the Government to introduce substantial independent evidence which would tend to establish the truthworthiness of the statement. Thus, the independent evidence serves a dual function. It tends to make the admission reliable, thus corroborating it while also establishing independently the other necessary elements of the offense. \* \* \* It is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth. Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." Id. p. 93, 75 S.Ct. p. 164.

Compare also Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).

By application of the rule enunciated in Opper, we have no difficulty in determining that the independent evidence hereinabove reviewed, corroborated and made truthworthy appellant's admissions and that such independent evidence is "truly substantial." See and compare Sansone v. United States, 334 F.2d 287 (8 Cir. 1964), aff'd 380 U.S. 343, 85 S. Ct. 1004, 13 L.Ed.2d 882 (1965); Fisher v. United States, 324 F.2d 775 (8 Cir. 1963), cert. denied 377 U.S. 999, 84 S. Ct. 1935, 12 L.Ed.2d 1049 (1964); Andrews v. United States, 309 F.2d 127 (5 Cir. 1962), cert. denied 372 U.S. 946, 83 S.Ct. 939, 9 L.Ed.2d 970 (1963).

■ Finally, appellant contends that he was not advised of his constitutional right to legal counsel and his constitutional right to remain silent before being interrogated; and that as a consequence the court erred in admitting his incriminating statement. Appellant relies upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The evidence does not support appellant's factual premise.

The court, outside the hearing of the jury, heard testimony on the voluntariness of the questioned statement. In this hearing Mr. Nidiffer, the postal inspector, testified that appellant offered no objection to being interrogated; that at the time appellant was not under arrest, and had not been accused; that at the outset of the questioning appellant was advised of his "right of not giving incriminating evidence against himself. I told him he had the right to employ counsel and to seek the advice of counsel and relatives and friends." Thereafter the questioning ensued without protest. After talking with appellant for "perhaps an hour" the inspector "asked him if he had any objections to making a statement. He said no, that he did not have. At that time I told him he didn't have to make a statement, that if he made one it could and probably would be used in a court of law, that he had the right to counsel, that he had the right to get advice from friends or relatives." The written statement was then pre-

pared. Appellant objected to one portion thereof, which was immediately stricken, and in its corrected form appellant signed and verified the statement under oath. The postal inspector's testimony was corroborated in large part by a police officer of the City of St. Louis, Missouri.

Appellant did not testify before the jury, in fact he offered no evidence. However, in the hearing before Judge Harper appellant did testify, but he made no attempt to repudiate any part of his statement, indeed he tacitly admitted that it correctly reflected what occurred in regard to the check. He conceded no threats of physical violence were made but claimed that some inducement was offered in the form of a lighter sentence if he would sign the statement. The asserted inducement was denied by the inspector. Appellant also admitted under questioning by the court that he had a record of three prior convictions for violating narcotic laws and that he was not completely ignorant of court proceedings and the investigation of criminal offenses.

After fully exploring the matter the district court was convinced that the statement was voluntary, that the constitutional rights of appellant had been fully protected and permitted the statement to be read to the jury.[2] This record convinces us that the district court's ruling was proper. The facts here simply do not bring this case within the rule of Escobedo, even assuming arguendo that Escobedo is entitled to retroactive application. We are thoroughly convinced that appellant, apparently of average intelligence, after being fully apprised of his rights, voluntarily imparted the information to the inspector, and understandingly signed the statement. It is, of

course, obvious that the admissions contained therein coincide with other independent evidence proving the guilt of appellant.

It is compellingly clear from the record that appellant received a fair and impartial trial. He was represented by able counsel. The evidence of his guilt of both offenses was strong and we find no basis for interfering with the judgment appealed from.

Affirmed.

---

2. The issue of voluntariness was also submitted to the jury by instruction, which reads:

"The court further instructs the jury that all evidence relating to any admission or other incriminating statement claimed to have been made by a defendant outside of court should be considered with caution and weighed with great care.

"If the evidence does not convince you beyond a reasonable doubt that such admission or other incriminating statement was made voluntarily and understandingly, then you should disregard it entirely."

No objection was or is made to this portion of the charge.