UNITED STATES of America,
Appellee,

v.

Ernest Esco MOONEY, Appellant.

No. 19579.

United States Court of Appeals
Eighth Circuit.

Nov. 19, 1969.

George J. Miller, of Miller & Buechner, St. Louis, Mo., for appellant and filed brief.

John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for appellee; Daniel Bartlett, Jr., U. S. Atty., was on the brief with Mr. Newton.

Before VOGEL, BLACKMUN and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

Ernest Esco Mooney, the appellant herein, was tried on a single-count indictment for possession of a check stolen from the mails knowing it to have been stolen.[1] This is a timely appeal from his conviction by a jury and imposition of a four-year sentence.

Although the testimony in the case is uncontradicted—the appellant not testifying and offering nothing in his defense —there are, *inter alia*, questions of identification and sufficiency which require a detailed statement of the evidence offered by the government.

The government's first witness, one Harold Jonathan Holmes, a Negro, testified that on January 24, 1968, he was employed as a teller at the State Bank of Wellston and was working the fourth drive-up window which he viewed by television from a distance of about a half a block. His view of the drive-up window was on a thirteen to fourteen-inch black and white TV screen. His place of operation was connected with the drive-up window by a pneumatic tube through which documents such as checks and money could be transmitted back and forth. Holmes testified that a man, whom he subsequently identified as the appellant, appeared in a car at the drive-up window accompanied by another person whom Holmes could not see clearly on his television screen. According to Holmes, appellant attempted to have two checks cashed, one drawn by the State of Missouri Division of Employment Security, Jefferson City, Missouri, on the Suburban Bank of Kansas City, Missouri, dated January 23, 1968, in the amount of $45 payable to T. J. Thiess, and bearing check No. 8772894, which check had been mailed addressed to T. J. Thiess, 4255 Virginia, St. Louis, Missouri, and which was the subject matter of the indictment herein. The second was a personal check in the amount of $92. Both bore the endorsement of "Robert A. Cohen". Holmes viewed the man whom he identified as the appellant for a period of approximately fifteen seconds on the television screen. As the man presenting the checks for cashing was at that time unknown to Holmes, he checked the balance in the account on which the personal check was drawn and found that there were not sufficient funds to cover it. This caused him to be suspicious and he compared the signature on the check with his signature file. When they did not match, he reported the variance to his supervisor.

At the trial, after testifying to the foregoing, Holmes admitted on cross-examination that subsequent to this hap-

---

1. 18 U.S.C.A. § 1708 provides in part:
"Whoever steals, takes, or abstracts * * * from or out of any * * * letter box, mail receptable, * * * or other authorized depository for mail matter, * * *; or

\* \* \* \* \* \*

"Whoever * * * unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been so stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted * * *,"
shall be punished as thereinafter provided.

pening he had been discharged from the bank for embezzling approximately $600; that he had been informed against under the Youth Correction Act wherein he entered a plea of guilty and that he was currently on probation.

When Holmes reported the fund insufficiency and the variance in signatures to his superior, the supervisor and a uniformed guard of the bank walked out toward the fourth drive-up window where a car occupied by two persons was still parked. As they approached, the car was hastily driven away but it turned into a dead-end street and was forced to stop in about a hundred feet. The two occupants fled, and were not identified by the bank guard or supervisor.

The local police impounded the automobile and identified it as belonging to appellant's brother, Delbert D. Mooney, who testified that on the day in question he had loaned his car to his brother, Ernest, the appellant herein, and a friend. Appellant stated to his brother Delbert that he needed to take his driver's test that afternoon and that was the reason for wanting to borrow the car, which he said he would return that evening.

The drawer of the check upon which the indictment is based (an employee of the Missouri Employment Security Division) testified as to his office's procedures for drafting and mailing unemployment checks and further introduced his records to show the check in question was actually mailed. The payee on the check, Thomas J. Thiess, testified to its non-receipt in the mails on the day of the attempt to cash it.

■ Appellant's first contention is that,

"The Court erred in overruling defendant's motion for a directed verdict of acquittal at the close of the government's case for the reason that the government failed to prove the matters set forth in the indictment."

Appellant's claim of a fatal variance between the indictment and the testimony actually shown at the trial is based on the fact that the indictment listed the payee's address as 4265 Virginia while his actual residence was at 4255 Virginia. Obviously this is nothing more than a typographical error in the indictment where "6" was used instead of "5". An indictment must, of course, provide adequate notice of the crime charged so as to enable the accused to properly prepare his defense. Additionally, it must be so worded as to protect against possible threats of double jeopardy. McIntyre v. United States, 8 Cir., 1967, 380 F.2d 822, at 826, cert. denied, 389 U.S. 992, 88 S.Ct. 493, 19 L.Ed.2d 487. However, minor variations between indictment and proof, such as clerical errors as to time or place, cannot be fatal unless prejudice be established. Whiteside v. United States, 8 Cir., 1965, 346 F.2d 500, cert. denied, 384 U.S. 1023, 86 S.Ct. 1946, 16 L.Ed.2d 1025; Lund v. United States, 8 Cir., 1927, 19 F.2d 46. Here no possible prejudice has or could be shown.

■ Appellant's next contention under this heading is his claim that the government failed to prove any actual theft from the mail. Direct proof as to a mail theft is rarely established. E. g., United States v. Hines, 2 Cir., 1958, 256 F.2d 561, 563–564. Proof of the mailing of the instrument, the check in this instance, combined with the appellant's possession and immediate flight on the same day when the payee did not receive the instrument is sufficient evidence for a jury to infer theft from the mails and knowledge on behalf of the appellant. Whitehorn v. United States, 8 Cir., 1967, 380 F.2d 909; Whiteside v. United States, supra; United States v. Zimple, 7 Cir., 1963, 318 F.2d 676; United States v. Hines, supra. In order to establish theft from the mails by circumstantial evidence, the government is not required to negate every other possibility. See United States v. Zimple, supra, at page 680 of 318 F.2d. The evidence here was sufficient to support the jury's findings.

Appellant's next two contentions are interrelated and are concerned with the witness Holmes' identification of him

made at a pre-trial stage when police showed Holmes ten or twelve photographs, two of which were of the appellant, and the receipt into evidence of testimony of the witness Holmes as to identification made at a pre-trial stage when someone representing the government pointed out the appellant to the witness Holmes in the court hallway just prior to the opening of the trial. Appellant's counsel concedes that he did not make any due process objections at the trial but, rather, asks this court to invoke the plain error criteria of Rule 52 (b), Federal Rules of Criminal Procedure, 18 U.S.C.A. Appellant did make a general objection to the eyewitness Holmes' testimony regarding identification of him through fifteen seconds' observation on a television screen as lacking in foundation. The objection was overruled. At no time has appellant raised the due process question except by post-trial motion.

■ As a general rule, the ordinary administration of criminal justice requires that the trial court have an opportunity of passing upon each objection before it can be raised on appeal. Petschl v. United States, 8 Cir., 1966, 369 F.2d 769, 773. An appellate court will pass only upon errors raised at the trial, excepting only where the error is so significant and so plain as to defeat substantial justice. Fountain v. United States, 5 Cir., 1969, 384 F.2d 624, cert. denied, Marshall v. United States, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105; Sykes v. United States, 5 Cir., 1966, 373 F.2d 607, cert. denied, 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138. Rule 52 (b) may only be invoked when the alleged error is both obvious and highly prejudicial to the rights of the defense, such as when material has been submitted to the jury although not introduced in evidence. See, Osborne v. United States, 8 Cir., 1965, 351 F.2d 111. To our minds neither occasion of identification herein by the witness Holmes justifies the application of the plain error rule.

■ The first of such identifications by Holmes dealt with some ten or twelve photographs shown Holmes by the local police department, two of which pictures were of the appellant. Holmes was the bank teller who just prior thereto had observed the person who attempted to cash the two checks by looking at him for approximately fifteen seconds on a thirteen or fourteen-inch television screen. In looking at the pictures produced by the police, Holmes identified one as being of the appellant. At the trial defense counsel elicited on cross-examination the approximate number of photographs shown to Holmes and the fact that all were, like appellant, photographs of white people. No testimony was offered or given as to the types of photographs or as to whether or not they were similar in appearance or whether any other of the subjects had two photographs of themselves. While well aware of the inherent danger of eyewitness identification through photographic evidence, see Simmons v. United States, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed. 2d 1247, we are unable to say on the basis of this record that plain error was committed. First, we suggest that contrary to appellant's argument, a fifteen-second look is substantially more than a fleeting glance. We deem it sufficient time for one whose business it is to identify persons presenting checks for payment, to have retained in his memory the resemblance of the person he so observed. Clearly any objection could only go to the weight of the testimony, not its admissibility, and the weight was for the jury's determination. Holmes' examination of the photographs shown to him by the police shortly after the television view was merely for the purpose of seeing whether the person who attempted to cash the checks was shown to be among them.

■ As to the validity of the confrontation immediately preceding trial, counsel for appellant insists that Holmes should not have been allowed to testify because of his identification of the appellant outside the courtroom on the

morning of the trial. The incident was developed on cross-examination of Holmes as follows:

"Q Prior to being seated right where you are right now and pointing out Mr. Mooney, did you ever point him out before this?

"A Snapshot.

"Q How about out in the hallway in the last, say three hours?

"A Did I ever point him out?

"Q Yes.

"A Yes.

"Q Were you ever informed who he was while he was standing out in the hallway?

"A Yes.

"Q Who told you that, do you know? If you know.

"A I'm not sure.

"Q Would it be either of these gentlemen seated here?

"A Well, I know it wasn't Mr. Newton. [Assistant United States Attorney prosecuting the case for the government.] I'm not sure.

"Q They pointed him out to you, is that correct?

"A Who do you mean by 'they'?

"Q Whoever it was that was out in the hallway.

"A Yes, they directed my attention.

"Q Do you know what the purpose of that was?

"A I guess to see if I could still identify him.

"Q After you ran this signature check, did you ever turn the camera back on again and see the driver?

"A No, I didn't.

"Q. So, then, you have already testified that you had the camera on 15 seconds; is that the entire length of time you had the camera on?

"A About that long.

"Q That is the only time you saw Mr. Mooney, then, or not Mr. Mooney, the driver of that car, was during those 15 seconds?

"A Except for the pictures and today.

"Q Now, the pictures, you were given ten pictures?

"A About ten, twelve.

"Q How many of those photographs looked similar?

"A There were two that looked similar. They were both of Mr. Mooney."

Appellant relies on, among other cases, United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. *Wade* involved a police line-up including the defendant in which witnesses were present for the purpose of making identification and this at a time when Wade was represented by counsel, but counsel was not advised and was not present. We have no such situation here.

We think it perfectly clear that Holmes' testimony regarding the identification of the appellant was proper and should have been received even if counsel for the appellant had seen fit to have made a due process objection at the time. It should be remembered that Holmes' identification of the appellant goes back to his fifteen-second observation of him at the time of the commission of the crime, that it continued through his being able to pick out photographs of the appellant from ten or twelve others supplied to him by the police, that he subsequently saw him in the hallway outside the courtroom immediately prior to the beginning of the trial, that he also identified him during the trial, pointing him out as being the person who offered the two checks for cashing at the drive-up windows. Holmes' testimony and his identification of the appellant is very substantially supported by the fact that brother Delbert Mooney's automobile had been loaned to the appellant for use during the day on which the crime was committed; that that automobile was used by the person who attempted to cash the checks; that in an attempted get-away, upon seeing a uniformed guard arriving the persons in charge of the automobile made an error

and were compelled to abandon the car in a blind alley approximately a hundred feet from the drive-up window, they escaping, but leaving the tell-tale automobile to substantiate identification of the appellant.

In his brief and at oral argument counsel for the appellant claimed that through inexperience in criminal matters he failed to make proper objections and failed to preserve and protect the substantial rights of the appellant. A reading of the entire transcript and a careful examination of the brief filed in behalf of the appellant, as well as consideration of counsel's argument on appeal, hardly justify the conclusion that counsel was naive, inexperienced or inattentive to his client's rights. Quite the opposite is indicated. Failure to follow further cross-examination of Holmes with reference to the photographs and the corridor confrontation may very well have been generated by sound trial tactics, rather than being the foment of inexperience and naivete. A careful consideration of this entire record convinces us that the appellant had a fair trial, that he was convicted on very substantial evidence, and that no error amounting to prejudice was committed.

Affirmed.