**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Barry Allen BRUCKMAN, Defendant-Appellant.**

**No. 71–1621.**

United States Court of Appeals, Seventh Circuit.

Argued May 19, 1972.

Decided Aug. 4, 1972.

Gerald M. Werksman, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Richard F. Sprague, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before KILEY and PELL, Circuit Judges, and GORDON, District Judge.[1]

KILEY, Circuit Judge.

Bruckman appeals from his conviction, after a bench trial, of violating the Military Selective Service Act [2] by knowingly and wilfully failing in his duty under § 462(a) [3] to inform his draft board of a change in his "military status," as required under 32 C.F.R. 1641.7(a),[4] after receiving notice that the Board had reclassified him from I–A to I–D on the

---

1. Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

2. 50 U.S.C.App. § 451, et seq.

3. 50 U.S.C.App. § 462(a) punishes with a maximum of five years imprisonment and a fine of not more than $10,000 "any . . . person charged . . . with the duty of carrying out any of the provisions of this title [III] or the rules or regulations . . . thereunder, who shall knowingly fail or neglect to perform such duty, . . . ."

4. 32 C.F.R. 1641.7(a) provides in pertinent part:

*Reporting by Registrants of Their Current Status.*

It shall be the duty of every classified registrant to keep his local board currently informed of his . . . military status. . . . Every registrant shall, within 10 days after it occurs, report to his local board in writing every change in such status. . . .

**756**

basis of false information that he had become a member of the Illinois National Guard. We affirm the conviction.

Viewed most favorably to the government, the evidence shows that in February, 1968 Bruckman paid Captain Vivian of the Illinois National Guard a $300 bribe for a promise to provide Bruckman with membership in the Guard so as to avoid the draft. Captain Vivian thereafter sent a false report to Bruckman's Local Board, indicating that Bruckman was a member of the Guard. The Board sent notice of the I–D classification (Member of Reserve) to Bruckman on April 11, 1968.

Further: Bruckman never received clothing or an identification card from the National Guard unit. He never attended a meeting, never heard from anyone connected with the Guard, and never inquired of the Guard concerning his status. On June 18, 1968 Bruckman's friend Krumhorn, who had also bribed Captain Vivian prior to Bruckman's doing so, was told by the FBI that the Guard unit in which both had anticipated membership was not in existence. Krumhorn told this to Bruckman that same day. At no time up to his November, 1969 I–A reclassification did Bruckman ever inform his Local Board that he was not a member of the Guard unit.

Bruckman was indicted September 24, 1970, and his trial and conviction followed.

## I.

### A.

The indictment charges Bruckman with commission of the offense "on or about March 28, 1968." The offense specified was that he did "knowingly and wilfully fail, neglect and refuse" to give notice to his Local Board of a change in his military status (*i. e.*, that

he was not a member of the Illinois National Guard).

The first question raised is whether Bruckman had a continuing duty to report to the Board that he was not a member of the National Guard.

The question rises upon Bruckman's contention that the government did not prove beyond a reasonable doubt that he "knowingly and wilfully" failed to notify the Board of his non-membership in the Guard, since at the time he received his I–D classification he thought he was a member, by virtue of the bribe, and accordingly was unaware of any breach of duty to report the change of military status under 32 C.F.R. 1641.7(a). But the government argues that under 1641.7(a) and 1642.2 [5] the offense charged was a "continuing" one. It claims that proof of Bruckman's violation of duty at any time between his I–D classification (April, 1968) and his I–A reclassification (November, 1969) supports the conviction. We hold that Bruckman had a continuing duty to report the change in his military status, commencing at the time he first learned that he was not a member of the Guard.

In Silverman v. United States, 220 F. 2d 36, 39 (8th Cir. 1955), the defendant was indicted in September, 1953 for failure to report for induction June 6, 1951. On appeal the court found no error in the district court's instruction to the jury that—although the indictment charged failure to report June 6, 1951 —the offense was a continuing one under 32 C.F.R. 1642.2, and that Silverman could be convicted of knowingly failing to report any time thereafter of the date of the indictment.

Subsequent to *Silverman* numerous courts have held that a registrant who *fails to report for induction* as ordered is under a continuing duty thereafter to

5. 32 C.F.R. 1642.2 provides as follows:
*Continuing Duty.* When it becomes the duty of a registrant . . . to perform an act or furnish information to a local board . . . the duty or obligation shall be a continuing duty . . . . from day to day and the failure to properly perform the act or the supplying of incorrect or false information shall in no way operate as a waiver of that continuing duty.

report. United States v. Williams, 433 F.2d 1305, 1306 (9th Cir. 1970); United States v. Preston, 420 F.2d 60 (5th Cir. 1969); Simmons v. United States, 406 F.2d 456, 463 (5th Cir. 1969); White v. United States, 403 F.2d 1005, 1007 (8th Cir. 1968). Other courts have held that a potential inductee who *fails to register* within five days of his eighteenth birthday is under a continuing duty to register (32 C.F.R. 1611.7(c), 1642.2) with his Board, United States v. Owens, 431 F.2d 349, 351 (5th Cir. 1970); that a registrant who *fails to report for his physical examination* as ordered is under a continuing duty to report once he is aware of the outstanding order, United States v. De Narvaez, 407 F.2d 185, 187 (2nd Cir. 1969); and that a registrant who *fails to advise his Local Board of a change of address* is thereafter under a continuing duty to notify the Board of an address where he can be reached, Venus v. United States, 287 F.2d 304, 309 (9th Cir. 1960), rev'd on other grounds, 368 U.S. 345, 82 S.Ct. 384, 7 L.Ed.2d 341.

Bruckman has not persuaded us that the line of cases noted above has been overcome in Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970); see *Owens, supra; Williams, supra.* In *Toussie* the defendant failed to register with his Local Board within five days of his eighteenth birthday (June 23, 1959). The government argued that since he failed to register up to his twenty-sixth birthday (June 23, 1967), the offense was "continuing" so that he could be indicted any time after that birthday within the five year statute of limitations. "The [Supreme] Court disagreed and held that the statute began to run on all possible violations five days after the defendant's eighteenth birthday. This was squarely based upon reasoning that the continuing duty regulation could not be construed to have the effect of varying the congressional policy of barring any prosecution for this offense five years after it was first committed." *Owens, supra,* 431 F.2d at 351. The Supreme Court in

*Toussie* thought that in the light of the history of presidential proclamations setting specific dates for registration, of its own decisions and of congressional policy the "doctrine of continuing offenses should be applied in only limited circumstances" and should not be applied to the offense of failure to register unless explicitly required in the statute involved or by the nature of the crime itself.

In the case before us, however, there is no statute of limitations problem. We are not presented with the "compounding of a single offense into a multitude for purposes of avoiding the statute of limitations." *Williams, supra,* 433 F.2d at 1306. Furthermore, the Court in *Toussie* did not, as Bruckman contends, invalidate the continuing duty regulation. As the court in *Owens* stated, 431 F.2d at 351:

> The Court did not . . . outlaw the continuing duty regulation; rather, it explicitly excepted it from the sweep of the opinion.

The exception referred to was footnote 17 in *Toussie*:

> We do not hold, as the dissent seems to imply . . . that the continuing duty regulation is unauthorized by the Act. All we hold is that neither the regulation nor the Act itself requires that failure to register be treated as the type of offense that effectively extends the statute of limitations. 397 U.S. at 121, n. 17, 90 S.Ct. at 864.

### B.

■ Bruckman contends that the government failed to prove that he violated § 462(a) "on or about March 28, 1968" as charged in the indictment, and that proof of the offense on another date was a fatal variance.

It was not necessary that the indictment charge Bruckman with failure to fulfill his continuing duty to notify his Board. *Preston, supra,* 420 F.2d at 62. It was sufficient that it charged him with knowing failure to report his changed military status "on or about

March 28, 1968" in violation of § 462(a), which provides a penalty for violation of the continuing duty regulation here involved.

We cannot see that Bruckman was prejudiced in any way by the date alleged in the indictment. The specific date was not of the essence of the offense, and was within the statute of limitations. *Owens, supra,* 431 F.2d at 350; Ledbetter v. United States, 170 U.S. 606, 613, 18 S.Ct. 774, 42 L.Ed. 1162 (1898); Lelles v. United States, 241 F.2d 21, 25 (9th Cir. 1957); Whiteside v. United States, 346 F.2d 500, 503–504 (8th Cir. 1965); United States v. Covington, 411 F.2d 1087 (4th Cir. 1969) (6 month variance); United States v. Kerr, 439 F.2d 689 (9th Cir. 1971) (2 month variance); United States v. Roberts, 466 F. 2d 193 (7th Cir., decided August 3, 1972); see 1 Wright, Federal Practice and Procedure § 125 at 247 (1969); Moore, Federal Practice § 7.05[1] at 7–25 (1972). Bruckman was not misled and could prepare his defense for any date after that alleged in the indictment until the date of the indictment. *Silverman, supra;* see also *Whiteside, supra.* And we see no possible double jeopardy danger to Bruckman.

We hold there was no fatal variance between the charge in the indictment and the proof at trial.

## II.

■ We see no merit in Bruckman's claim that the evidence was insufficient to show beyond a reasonable doubt that he knew he was not a member of the National Guard. On June 18, 1968 Krumhorn learned from the FBI that there was no Guard unit in which they had been promised membership by Vivian, and that both he and Bruckman had been hoaxed. Krumhorn told this to Bruckman the same day and Bruckman exclaimed: "Oh my God, what am I going to do."[6] Furthermore, the judge was entitled to determine that it was unlikely that Bruckman and Krumhorn—

sophisticated enough to bribe Vivian—could be so naive as to rely, without checking, on Vivian's vague statements and assertions of their membership in the Guard.

## III.

■ Finally, we see no merit in Bruckman's argument that the court erred in not dismissing the indictment on the ground that had he informed the Board that he was not a member of the Guard he would have risked incriminating himself in violation of his Fifth Amendment right against self-incrimination.

The district court decided, and we agree, that the scope of Bruckman's duty was simply to report that his military status was changed since he was not a member of the Guard. Bruckman was under no need or coercion to make reference to his bribery of Vivian. The information he was required to give, therefore, would not per se "confront [Bruckman] with 'substantial hazards of self-incrimination.' " California v. Byers, 402 U.S. 424, 429, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971). The decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), cited by Bruckman, are distinguished from his case. In each of those cases the "privilege was applied only in 'an area permeated with criminal statutes'—not in an 'essentially non-criminal and regulatory area of inquiry.' " *Byers, supra,* 402 U.S. at 430, 91 S.Ct. at 1539. The Selective Service System is essentially noncriminal and regulatory. Bruckman's duty to inform the Board of change in his military status is an essential burden on all registrants in order to facilitate administration of the Act to achieve a necessary national purpose. It is "essentially a neutral act." *Id.* at 432, 91 S.Ct. 1535. The "possibilities"

6. Bruckman did not testify.

of incrimination arising from performance of duty by Bruckman cannot defeat the "strong policies in favor of a disclosure" of the information called for by the authorized regulation before us. *Id.* at 428, 91 S.Ct. at 1538.

The district court did not err in denying Bruckman's motion to dismiss the indictment on the Fifth Amendment ground urged in the motion.

Affirmed.