**Ernest Lee HOLLAND, Appellant,**

v.

**STATE OF NEBRASKA, Appellee.**

**No. 19487.**

United States Court of Appeals
Eighth Circuit.

Oct. 14, 1969.

C. Arlen Beam, of Chambers, Holland, Dudgeon & Beam, Lincoln, Neb., for appellant.

Ralph H. Gillan, Asst. Atty. Gen. of Nebraska, Lincoln, Neb., for appellee; Clarence A. H. Meyer, Atty. Gen., on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MEHAFFY and GIBSON, Circuit Judges.

MEHAFFY, Circuit Judge.

Ernest Lee Holland, a Nebraska state prisoner, appeals from an order denying his application for a writ of habeas corpus entered by The Honorable Robert Van Pelt, United States District Judge for the District of Nebraska, after a full evidentiary hearing. We affirm.

The assignment of errors presented here concerns (1) the identification procedures used by the local officers; (2) the federal district court's conclusion that improper denial of legal counsel during Holland's long period of detention did not show possibility of prejudice and did not constitute a violation of Holland's constitutional rights; and (3) the asserted error of the federal district court in failing to find from the evidence that the state did not carry out its obligation to disclose all evidence at trial which was of material importance to the defense.

Holland was arrested on December 23, 1965 in Sioux City, Iowa. He waived extradition and was taken to Omaha that day. He remained in the municipal jail in Omaha until December 24 when he was taken to the county jail and remained there until his trial on March 7, 1966.

While incarcerated Holland claims that he was repeatedly questioned, threatened and offered inducements to confess, but on no occasion did he make any incriminating statement or admit his guilt. During this period he was also subjected, without presence of counsel, to a number of line-ups and at least one show-up confrontation. Holland was not allowed to make personal use of the telephone until March 1, 1966 despite his repeated requests. In the the middle of January Holland and a number of other prisoners in the county jail were interviewed by a public defender and Holland testified that the public defender advised him "to take low and go," meaning that the state had an ironclad case against him and he should plead guilty and seek a light sentence. Holland states that he declined the services of this public defender. No bail was set for Holland until February 1, 1966. Compounding this background, the local officers picked up the eyewitness to the crime, James A. Reilly; the proprietor of the drug store, who was not an identifying witness; and Holland, who was handcuffed and dressed in prison garb, and transported them together to the

preliminary hearing on February 1, 1966.

This case has engaged our closest scrutiny because of our abhorrence of the conduct of the local police during Holland's pretrial incarceration as he was held virtually incommunicado from the time of his apprehension on December 23, 1965. He was not permitted personally to use the telephone until about the first of March, which call resulted in his obtaining sufficient funds to employ an attorney of his choice. Judge Van Pelt in his memorandum opinion also deplored the procedures followed by the local authorities, and we share his criticism of the procedures which today would be illegal per se but which do not warrant a reversal of this case because of the complete lack of showing of a reasonable possibility of prejudice or a violation of due process.

The eyewitness, James A. Reilly, an employee of the United States Post Office Department, was a customer in the drug store at the time of the crime. Shortly thereafter, upon the arrival of the police, Reilly gave them a description of Holland and later on a number of occasions the police exhibited to Reilly groups of "mug" shots. Eventually he identified one which led to Holland's apprehension. At the request of the police, prior to Holland's apprehension, Reilly viewed several line-ups but made no identification. It was only after Holland's incarceration and the line-ups conducted there that Reilly again identified Holland as being the robber who held a gun on him at a distance of about three feet where they looked at each other eye to eye. Much time had intervened between the habeas hearing, the trial and investigative period, and the evidence is somewhat vague as to the number of line-ups Reilly witnessed before identifying Holland. Judge Van Pelt found from the evidence adduced at the habeas hearing that at least one of the times Reilly identified Holland was during a show-up but it appeared that the first identification was apparently at a line-up.

## The Rules of the Douglas County Jail in Omaha at the Time Involved.

The inmates of the Douglas County jail were permitted only one personal telephone call for the purpose of calling a bondsman, lawyer or family member to let it be known that the prisoner was in jail, but once this single personal call had been made and the prisoner placed in the cell he was not permitted to come out and make other calls. The jailers, however, do make calls for the prisoners and the prisoners are allowed mailing privileges. Holland knew of the mailing privilege because he wrote the district attorney on one occasion. Mr. Terry, a deputy sheriff who served as one of the jailers, was called as a witness by Holland at the habeas hearing and he testified that he was not on duty when Holland was incarcerated and did not know whether Holland was permitted the first call or not, but did know of Holland's several requests to use the telephone and the rejection of these requests by his superior. After Holland had located an attorney to represent him, Terry violated the rule and brought Holland out of his cell and placed a call himself to Holland's father which resulted in Holland's procuring money to pay his private attorney. Sometime before this Holland had arranged to borrow $200.00 from an inmate and have it delivered to the attorney but needed additional money for the balance of the legal fee. Terry explained that the rule of only one personal call being allowed was occasioned by the fact that from 207 to 230 prisoners are in the jail and to give one of them permission to make personal telephone calls would require the giving of such permission to all of them.

## Failure to Provide Attorney during Line-Ups and Pretrial Interrogation.

Holland was not offered counsel before the line-ups and this is required since the Supreme Court's holdings in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). However, the Supreme Court held in

Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), that the rule established by *Wade* and *Gilbert* was not retroactive and is inapplicable to confrontations prior to June 12, 1967. In *Stovall* the Court held that a petitioner would be entitled to relief only if "the confrontation conducted in this case was unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." In the instant case, Judge Van Pelt, noting said decisions, properly held that, since Holland's case was final before the decision in *Wade*, the fact that he did not have counsel at the line-ups does not of itself entitle him to relief.

*Counsel at Preliminary Hearing.*

The records of the state proceedings are made a part of this record and the handwritten record of the judge reflects:

"2/1/66

Let the Record show that Michael McCormick a member of the Public Defenders Staff, was present in Court during the preliminary hearing and offered his services to defendant. That the defendant expressed the desire to represent himself and did so.

D. B. Anderson
Judge"

*Counsel at Arraignment.*

The order at arraignment on February 17, 1966 shows that the county attorney appeared on behalf of the State of Nebraska and defendant was present without counsel. It reflects the following:

"Thereupon it appearing that defendant is in indigent circumstances and unable to employ counsel,

"IT IS ORDERED that the Public Defender be appointed as Counsel for the Defendant.

"Thereupon defendant being present with counsel F. Montag, was duly arraigned and pled Not Guilty. "Cause set for trial to the next jury panel or as soon thereafter as it may be reached. Defendant remanded to the custody of the Sheriff."

It is noted that Mr. Montag, the public defender appearing with defendant at arraignment, was not the same public defender that Holland had objected to by reason of being advised by him to plead guilty. Holland admits the presence of Mr. Montag but testified that he told the court he could obtain private counsel if permitted the use of a telephone. The state record does not corroborate this and nowhere at any time did Holland object to the services of Mr. Montag.

■ Holland's present appointed counsel argues that Holland was convicted solely on the evidence of a single witness whose identification of Holland was based upon a police "show-up" which was unnecessarily suggestive and conducive to irreparable misidentification; that subsequent to said police "show-up" he was viewed in a police "line-up" wherein all other persons were so greatly different in physical characteristics that he was the only possible choice. He described the men in the line-up as "an old man, the petitioner, and a tall thin man with blond hair." But there is a basic flaw in all of the arguments made by counsel, and that is that his assertions are simply not borne out by the evidence in the case.[1]

\*  \*  \*  \*  \*

"Assuming a 'line-up' identification of petitioner Holland as contended by the State, we find that three persons, an old man, the petitioner, and a tall thin man with blond hair were shown to the eyewitness. Only the petitioner was in any manner similar to the description Mr. James A. Reilly had earlier given to the Omaha Police Department."

1. In appellant's brief it is stated:
   "[T]hat he was convicted solely on the evidence of a single witness whose identification of the Petitioner was based upon a police 'show-up' at the Omaha Police Station which was unnecessarily suggestive and conducive to irreparable misidentification; that subsequent to said police 'show-up' he was viewed in a police 'line-up' wherein all other persons were so greatly different in physical characteristics that he was the only possible choice.

It is crystal clear that the eyewitness immediately after the robbery gave the police a description of the robber and that he ultimately made the original identification from numerous "mug" shots shown to him. It is also apparent from the record that the first live identification the witness made of Holland was at a line-up properly conducted except for the fact that Holland was without counsel at that time. There is a picture of the line-up in the record, and Judge Van Pelt viewed it and found the line-up properly conducted. We have also observed the picture and agree with Judge Van Pelt's conclusion. Neither of the three subjects was an old man and neither had gray or blond hair; they were all about the same size and all had dark hair; one appeared to be a little older than the other two. There is absolutely nothing about the line-up to suggest to the witness that Holland was the one believed to be guilty. Furthermore, it must be remembered that the witness identified Holland first from a "mug" shot.

It was unfortunate that Holland and two of the witnesses, including the eyewitness, were taken to the preliminary hearing in the same automobile, but this was after the positive identification made from the "mug" shots and the line-ups. There is little doubt that Reilly would be mistaken in his identification after having the robber hold a gun on him and look him in the eye in a well lighted area for a period of about two minutes. In any event, this was resolved by the jury.

■ The final argument made that the state failed to disclose all of the state evidence at the trial is completely specious. It is contended that Reilly made a previous misidentification which was not disclosed at the trial. The record simply does not support this statement. As a matter of fact, Judge Van Pelt held not only that the matter of the identification was thoroughly gone into at the state trial but also that it was obvious that all of the witnesses produced at the habeas hearing were available to Holland's retained attorney at his trial. The only thing counsel could legitimately contend is that one of the witnesses at one point in his testimony became confused and made a mistake as to the date when identification of Holland was made.

■ In sum, we are convinced by a canvass of the record that Holland had a fair trial; that he always had an opportunity to contact anyone he wanted to by mail or otherwise except by personal use of the telephone; that he elected to represent himself at the preliminary hearing which was not a critical stage under Nebraska law;[2] that at the arraignment a different public defender was appointed by the court to which defendant at the time made no objection and entered his plea of not guilty; that later when he did procure funds from a fellow inmate he was permitted to call his father to obtain additional funds; that his attorney had ample opportunity to prepare for trial as the identical witnesses who were presented by Holland at the habeas hearing were known to defense counsel and available at the state trial; and that none of the cases cited by counsel, including Biggers v. State of Tenn., 390 U.S. 404, 88 S.Ct. 979, 19 L.Ed.2d 1267 (1968), (also noted by Judge Van Pelt) which counsel suggests as representing the most analogous situation, in any way supports counsel's argument.

The order entered denying the petition for writ of habeas corpus is affirmed.

See: Sheldon v. Nebraska, 401 F.2d 342 (8th Cir. 1968); Burnside v. Nebraska, 346 F.2d 88 (8th Cir. 1965); Ronzzo v. Sigler, 235 F.Supp. 839 (D.C.Neb.1964), aff'd, 346 F.2d 565 (8th Cir. 1965).

2. We have held many times that the preliminary hearing in Nebraska is not a critical stage in the proceedings and that lack of counsel does not violate the mandate of Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).