**UNITED STATES of America, Appellee,**

v.

**George Albert MILLS, Appellant.**

**No. 20013.**

United States Court of Appeals, Eighth Circuit.

Aug. 14, 1970.

George Albert Mills, pro se.

Gene R. Krekel, and Dennis D. Meridith, Asst. U. S. Attys., Sioux City, Iowa, on brief for appellee.

Before MEHAFFY, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

By petition for writ of error *coram nobis* under 28 U.S.C. § 1651(a), George Albert Mills seeks to overturn convictions entered in 1958 for escape and conspiracy to escape in violation of 18 U.S.C. §§ 751 and 371. The district court, Judge William C. Hanson, appointed counsel to represent Mills and, after a full hearing, denied his petition. Mills prosecutes this appeal pro se. The substantive issue concerns petitioner's mental competency on September 30, 1958, the day Mills appeared in federal court and pleaded guilty to these charges. For reasons stated below, we affirm.

At the threshold of this appeal, the government contends that Mills failed to timely file a notice of appeal within ten days following the entry of

the district court's order denying him relief as is required by Fed.R. App.P. 4(b), which, as pertinent, provides:

> In a criminal case the notice of appeal by a defendant shall be filed in the district court *within 10 days* after the entry of the judgment or order appealed from. * * * Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period *not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.* (Emphasis added.)

This rule seems to cover the instant proceeding, since *coram nobis* is deemed a step in a criminal case. United States v. Morgan, 346 U.S. 502, 505 n. 4, 74 S.Ct. 247, 98 L.Ed. 248 (1954). The clerk of the district court received Mills' notice of appeal beyond the specified ten-day period, but within the overall forty-day period encompassed by the rule. Though the district court entered no formal order in this case, we construe its acceptance of Mills' notice of appeal outside the ten-day period as a grant of additional time for Mills to proceed with his appeal. See Johnson v. United States, 132 U.S.App.D.C. 4, 405 F.2d 1072 (1968).[1]

We proceed to the merits and, as a frame of reference, examine the circumstances surrounding Mills' 1958 custody and his present predicament. On August 20, 1958, Mills and an accomplice robbed the Corn Belt State Bank of Correctionville, Iowa, and, in that connection, forced the bank president to accompany one of the robbers from his residence to the bank. Police apprehended Mills and an accomplice shortly after the crime and placed them in the Woodbury County Jail at Sioux City, Iowa, under federal custody. A few days later, Mills attempted escape. As a consequence of these activities, the government prosecuted Mills for escape and for bank robbery. Mills waived indictment on all charges, four counts of bank robbery and two counts relating to the escape, and the government proceeded upon information. On September 30, 1958, Mills appeared with appointed counsel before the late Judge Henry Graven, who accepted Mills' pleas of guilty to all charges. Judge Graven sentenced the petitioner to serve a term of twenty years for robbery and, in addition, two five-year consecutive terms on the escape charges to be served consecutively with the sentence for robbery. In 1962, however, Judge Graven vacated the bank robbery conviction. He ruled the conviction invalid because the government needed to prosecute one of the bank robbery charges, which called for a possible death penalty, by indictment rather than by information. A grand jury, thereafter, indicted Mills in August, 1962, for bank robbery. No immediate trial followed. Instead, the court committed Mills to the Federal Medical Center at Springfield, Missouri, for a determination of his competency to stand trial. The Medical Center advised the court on several occasions that Mills lacked competency to assist in his defense, and the trial court specifically found to the same effect at formal hearings in 1963 and 1966. Finally, in August of 1969, the trial court determined that Mills could be tried. Mills submitted this case to a jury, which returned a verdict of guilty. The trial court again sentenced Mills to a term of twenty-years imprisonment, but granted him specified credits for time already served. During the years subsequent to 1958, Mills completed service of his prison terms for his escape and conspiracy to escape convictions. He contends that these convictions still produce or will produce adverse collateral consequences for him. See Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

---

1. Upon return of our mandate, the district court may enter an appropriate order *nunc pro tunc* extending Mills' time to appeal.

Since the parties produced medical and psychiatric evidence on the issue of Mills' insanity as raised in the 1969 robbery trial, both sides stipulated that Judge Hanson should consider the pertinent testimony offered at the prior jury trial upon the issues presented by the *coram nobis* petition. Mills specifically introduced, at the *coram nobis* hearing, his personal testimony, certain medical reports and the testimony of Dr. Philip H. Pugh, a qualified psychiatrist from Sioux City, Iowa. The government, in turn, relied upon medical and lay testimony it had produced at the bank robbery trial to show Mills' criminal responsibility for committing the 1958 robbery, Judge Hanson's order denying Mills relief, entered following this hearing, recited in part:

> Petitioner attacks the legality of a conviction and sentence entered in Criminal Case No. 4457 on September 30, 1958. Petitioner alleged that his mental condition was such at the time he was convicted and sentenced that the conviction and sentence must be set aside.
>
> On August 25–29, 1969 petitioner was tried and convicted in this Court for an offense occurring on August 20, 1958. At this trial petitioner herein raised his mental condition during the time of the offense as a defense. Various psychiatrists testified as to petitioner's mental condition in 1958. *The jury found that the petitioner's mental condition was such that at the time of the offense on August 20, 1958 he could distinguish right from wrong, he was capable of knowing the nature of the act he committed, and he did not act through irresistible impulse.* This Court feels the evidence was overwhelming that petitioner's mental faculties were sufficient in August of 1958 and there is nothing to indicate that his mental condition was any different in September of 1958. (Emphasis added.)

Mills focuses upon the italicized sentence and claims that Judge Hanson erroneously reconsidered the same issue presented at the 1969 jury trial; that is, petitioner's competency to commit the robbery, not his competency to stand trial in September of 1958, and that the trial court erroneously relied on the jury verdict as a predicate for denying Mills relief.

Our review of the dialog at the *coram nobis* hearing, including comments by petitioner, his counsel and the prosecutor, and the court's responses thereto, indicates that the parties and the court understood that the scope of the issue in the *coram nobis* proceeding concerned Mills' competency to stand trial. Mills' counsel specifically noted that petitioner placed principal reliance upon Dr. Pugh's testimony that "the patient [Mills] at the time of the bank robbery was indeed psychotic and incompetent * * *" to establish Mills' incompetency during the month following, when Mills appeared before Judge Graven. Judge Hanson's reference to the 1969 criminal proceeding and the jury verdict of guilty in his *coram nobis* order serves only to indicate that the parties stipulated the evidence produced at the criminal trial and considered by the jury into the *coram nobis* hearing. His order clearly enunciated the issue presented to him as relating to Mills' "mental condition . . at the time he was convicted and sentenced * * *."

In view of petitioner's contentions, we have carefully and meticulously reviewed the entire record presented on this issue. Mills' medical records clearly disclose that he developed a full-blown psychosis in September of 1959 after learning of his father's death. Mills was then incarcerated in the federal penitentiary at Alcatraz. Prison authorities transferred him to the Federal Medical Center at Springfield, Missouri, for further evaluation and treatment. Its staff evaluation in 1963 summarized Mills' medical history in part and stated that:

> It was while he was at Alcatraz that he received word of his father's death, and psychiatric reports from that institution indicate that the patient had an acute psychotic reaction of a schiz-

ophrenic nature with catatonic and paranoid features. This is the first indication we have of any grossly psychotic behavior on the part of the patient.

Direct medical testimony supported this summary.

Dr. James Baker, a psychiatrist at Leavenworth Penitentiary, examined Mills on November 5, 1958, approximately one month after Mills' court appearance before Judge Graven. His purpose in evaluating Mills at this time was to determine the inmate's suitability for transfer to Alcatraz. Dr. Baker testified in the 1969 robbery trial and characterized Mills as "competent", "responsible" and lacking any overt psychotic symptoms during November, 1958. Other testimony and evidence produced by the government amply support the trial court's view that petitioner suffered no mental illness affecting his competency in August and September of 1958. We have noted, too, that Dr. Pugh, who testified on behalf of Mills, based his opinion, in part, on a theory that Mills' acute psychosis in 1959 pre-existed from the acute phase in July, 1959, to at least August, 1958. Medical and lay observations and medical testimony concerning Mills' activities and mental condition during this period in question contradicted Dr. Pugh's hypothesis. Dr. Pugh did not actually have the opportunity to examine Mills until 1966.

 In evaluating the district court's findings, we apply the test laid down in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), that competency is determined by whether Mills had sufficient ability as of the time of his trial in 1958 to consult with his lawyer with a reasonable degree of rational understanding and possessed a rational, as well as factual, understanding of the proceedings against him. See United States v. Schultz, 431 F.2d 907 (8th Cir., July 17, 1970); Wheeler v. United States, 404 F.2d 252 (8th Cir. 1968); Butler v. United States, 384 F.2d 522 (8th Cir. 1967), cert. denied, 391 U.S. 952, 88 S.Ct. 1854, 20 L.Ed.2d 865 (1968). Under this test, the trial court properly determined Mills' competency.

Mills also contends on this appeal that Judge Graven's failure to fully comply with Fed.R.Crim.P. 11 requires reversal. In his petition, Mills alleged:

Further, that due to his mental incompetency, petitioner was not rationally able to understand the nature of the criminal charges pending against him * * * and as a consequence thereof could not, as specifically required by Rule 11, Federal Rules of Criminal Procedure, Title 18 U.S.C.A., voluntarily and with complete understanding of the consequences of his act, enter a plea of guilty * * *.

The record of the hearing does not indicate that Mills specifically presented this issue to the district court, although his petition may be construed as an attack on the validity of his plea for failure to comply with said rule.

 The record indicates that Judge Graven did not technically comply with all of the present provisions of Rule 11, in that he did not "personally" address the defendant and ascertain that he understood the "consequences of the plea". We note that these requirements were not incorporated into Rule 11 until 1966, long after the proceedings in this case. Further, the failure of the trial court to fully comply with the present provisions of Rule 11 in accepting a plea of guilty prior to the Supreme Court's decision in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), does not render such plea involuntary per se. Halladay v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); see Meyer v. United States, 424 F.2d 1181, 1189 (8th Cir. 1970). We also are cognizant of the fact that the record here does indicate that Mills, in response to specific questions asked at the hearing, stated that he had thoroughly discussed the

charges with his counsel, that he understood the nature of those charges and the possible penalties that could flow from them, and that, with such understanding, he freely and voluntarily entered his plea of guilty.

Accordingly, we reject Mills' challenge and affirm.