**UNITED STATES of America, Appellee,**

v.

**George Albert MILLS, Appellant.**

**No. 19947.**

United States Court of Appeals, Eighth Circuit.

Oct. 16, 1970.

Certiorari Denied Feb. 22, 1971.

See 91 S.Ct. 908.

---

Don N. Kersten, Fort Dodge, Iowa, for appellant, and filed briefs.

Gene R. Krekel, Asst. U. S. Atty., Sioux City, Iowa, for appellee, and filed brief; Evan L. Hultman, U. S. Atty., and Dennis D. Meredith, Asst. U. S. Atty., Sioux City, Iowa, were on the brief with Gene R. Krekel.

Before VOGEL, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

On August 20, 1958, George Albert Mills and an accomplice robbed the Corn Belt State Bank of Correctionville, Iowa, a federally-insured institution. Police

apprehended Mills and his cohort Darwin Evert Coon after the crime and placed them in the Woodbury County Jail at Sioux City, Iowa, under federal custody. A few days later, Mills attempted escape. As a consequence of these activities, the government prosecuted Mills for bank robbery as well as on escape charges. Mills waived indictment and the government proceeded by information. On September 30, 1958, Mills appeared in court with appointed counsel and pleaded guilty to four charges relating to bank robbery and two charges relating to escape. Judge Graven sentenced the petitioner to serve a term of twenty years for robbery and, in addition, two five-year consecutive terms on the escape charges to be served consecutively with the sentence for robbery. In 1962, however, Judge Graven vacated the bank robbery conviction. He ruled that conviction invalid because one of the bank robbery charges under 18 U.S.C. § 2113(e) called for a possible death penalty, and, therefore, Rule 7(a) of the Federal Rules of Criminal Procedure required the government to prosecute by indictment rather than by information. Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

A grand jury, thereafter, indicted Mills in August, 1962, for the same bank robbery charges. However, Mills' mental illness prevented an immediate trial on this indictment. Instead, the court (Judge Hanson) committed Mills to the Federal Medical Center at Springfield, Missouri, for a determination of his competency to stand trial. The Medical Center advised the court on several occasions that Mills lacked competency to assist in his defense. Judge Hanson specifically found Mills incompetent to stand trial at formal hearings held in 1963 and 1966. Finally, in August of 1969, the trial court determined that Mills could be tried. The case was submitted to a jury, which returned a verdict of guilty. The trial court on September 19, 1969, again sentenced Mills to a term of twenty-years imprisonment, but granted him specified credits for all periods of incarceration since August 21, 1958.[1] Mills, in fact, benefitted substantially from his second trial. Whereas Judge Graven had initially sentenced him to a total of thirty years on all counts, Judge Hanson's sentence, by providing credit for prior incarceration, resulted in concurrent service on the escape charges.

Another panel of this court considered the substantive facts relating to the bank robbery in connection with the trial of Mills' accomplice. Coon v. United States, 360 F.2d 550 (8th Cir.), cert. denied, 385 U.S. 873, 87 S.Ct. 145, 17 L.Ed.2d 100 (1966). More recently, we affirmed Judge Hanson's determination that Mills possessed mental competency on September 30, 1958, when he initially entered guilty pleas to criminal charges flowing from the escape attempt. Mills v. United States (Mills I), 430 F.2d 526 (8th Cir., No. 20013, August 14, 1970).

On this appeal, Mills urges the following grounds for reversal: (1) That the government denied him a speedy trial in violation of the Sixth Amendment, and that the district court should have dismissed the indictment pursuant to Fed. R.Crim.P. 48(b) for unnecessary delay in bringing Mills to trial; (2) That the trial court erred in admitting the following evidence: Mills' confession, items seized from his automobile, identification testimony allegedly tainted by an illegal lineup, and opinion evidence on the issue of insanity allegedly without proper foundation; and (3) That the trial court erred in instructing the jury concerning criminal responsibility. For reasons stated below, we reject these contentions and affirm the conviction.

## I. SPEEDY TRIAL

The Sixth Amendment guarantees that "the accused shall enjoy the right to a

---

1. During the years subsequent to 1958, Mills completed service of his prison terms on his convictions for escape and conspiracy to escape. The trial court estimated Mills' likely release date for his present incarceration as December, 1970, contingent upon his continuing good conduct.

speedy and public trial, \* \* \*'' Appellant cites the eleven-year delay from the date of his apprehension in 1958 to his conviction in 1969 as conclusively establishing a violation of this constitutional right.

█ In this case, the delay between Mills' arrest and trial may be divided into three general parts. The first period represents the interval between Mills' apprehension in 1958 and February, 1963, when Judge Hanson initially set his case for trial on the bank robbery charge. During this period, Mills commenced serving the sentence following his conviction on the guilty plea, but, as noted above, Judge Graven vacated the sentence in response to a collateral attack thereon. When a defendant, through appeal or collateral attack, succeeds in reversing or annulling an unsatisfied conviction, the law permits him to be retried in the normal course of events notwithstanding delay incident to such legal proceedings. United States v. Ewell, 383 U.S. 116, 121, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966). The double jeopardy clause affords no bar to retrial for an accused who succeeds in reversing his conviction. See United States v. Tateo, 377 U.S. 463, 465, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964); Houp v. State of Nebraska, 427 F.2d 254 (8th Cir. 1970). Mr. Justice White, speaking for the Court in *Ewell, supra*, 383 U.S. 116, 86 S.Ct. 773, discussed the relationship between double jeopardy and speedy trial, stating:

> The rule of these cases, which dealt with the Double Jeopardy Clause, has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error. United States v. Tateo, *supra*, [377 U.S.], at 466 [84 S.Ct. 1587, at 1589]. These policies, so carefully preserved in this Court's interpretation of the Double

> Jeopardy Clause, would be seriously undercut by the interpretation given the Speedy Trial Clause by the court below. Indeed, such an interpretation would place a premium upon collateral rather than upon direct attack because of the greater possibility that immunization might attach. 383 U.S. at 121, 86 S.Ct. at 777.

Thus, this initial delay did not abridge Mills' right to a speedy trial.

█ The second portion of the delay in the instant case consists of the period from February, 1963, to November 19, 1968. Contemplating an early 1963 trial, a pre-arraignment hearing was held on February 19, 1963. At that time, Mills, with his appointed counsel, requested the court to order a complete psychiatric examination at the Federal Medical Center at Springfield, Missouri, to determine his "mental competency at this time." The trial court granted the request and postponed further action pending receipt of the reports from the Medical Center. Upon receiving these reports in June of 1963, Judge Hanson conducted a hearing to determine Mills' competency to stand trial. Following the hearing, he declared Mills incompetent and ordered him committed to the custody of the Attorney General pursuant to the provisions of 18 U.S.C. §§ 4244, 4246.

Mills was returned to the Medical Center and there underwent psychiatric treatment. Mills improved to the extent that the trial court tentatively scheduled a trial for the fall of 1964. His mental condition regressed in September, however, and the court then removed the case from the calendar.

In early 1966, Judge Hanson, again encouraged by Medical Center reports indicating consistent improvement in Mills' mental health, considered a trial that year and ordered a further hearing to reconsider Mills' competency. In the interim between the early 1966 reports and the hearing held in May, 1966, Mills' condition again regressed. After hearing testimony from two psychiatrists, one from the Federal Medical Center and one from Sioux City appointed by the

court, Judge Hanson concluded that Mills was not mentally competent to stand trial at that time. Mills returned to the Springfield Medical Center. He again showed improvement and on November 19, 1968, physicians from the Medical Center reported him competent to stand trial.

The third delay, administrative in nature, developed between this date and April 29, 1969, when the trial court ordered that Mills be returned to the district for pretrial proceedings. This additional delay of less than six months resulted from the failure of the Federal Medical Center to forward immediately the latest medical data concerning Mills' condition and the absence of Mills' file from the district court. Mills had applied to the United States Supreme Court for a writ of certiorari to review our order dated December 12, 1968, which denied Mills an appeal from an earlier order of the district court rejecting Mills' mandamus petition to compel an immediate trial.[2] The Supreme Court denied the writ on April 1, 1969. Mills v. United States, 394 U.S. 954, 89 S.Ct. 1285, 22 L.Ed.2d 490 (1969). In his order of April 29, 1969, calling for Mills' return to Iowa, Judge Hanson recited Mills' improved mental condition as reported by the Medical Center and noted the denial of certiorari. Appellant makes no claim concerning delay subsequent to May 8, 1969, when he was returned to the district. We attach no significance to this third period of delay. The court could not practically proceed until it received a favorable medical report on Mills from the Federal Medical Center or until the Supreme Court returned the accused's file.

The crucial factor in the delay in bringing Mills to trial concerns his mentally-incompetent status after Febru-

ary, 1963. The courts, in considering this question, hold that delays encountered in bringing a defendant to trial who claims to be incompetent or who is temporarily incompetent ordinarily do not infringe upon his Sixth Amendment right to a speedy trial. Hodges v. United States, 408 F.2d 543, 551 (8th Cir. 1969); United States v. Davis, 365 F.2d 251 (5th Cir. 1966); Johnson v. United States, 333 F.2d 371, 374 (10th Cir. 1964); Howard v. United States, 261 F.2d 729 (5th Cir. 1958).

Although we find that no separate segment of the total delay, in and of itself, violated the Sixth Amendment, we must, nevertheless, examine the entire eleven-year span from Mills' apprehension until his trial in the light of *Ewell*, *supra*, 383 U.S. 116, 86 S.Ct. 773. There, the Court declared that compliance with the speedy trial guarantee of the Sixth Amendment (1) *prevents undue and oppressive incarceration of an accused prior to trial*, (2) *minimizes the defendant's anxiety and concern which accompany public accusation*, and (3) *limits the possibilities that a long delay will impair the defendant's ability to defend himself*. 383 U.S. at 120, 86 S.Ct. at 776.

Of these three safeguards, the latter two require only brief comment since they appear inapplicable to the instant case. Mills, a stranger to Iowa, had already been properly convicted on escape charges secondary to the bank robbery. The record discloses no evidence indicating anxiety by Mills over the effect of his public accusation and here, as in *Hodges, supra*, 408 F.2d 543, we find no indication of the accused's concern about the public reaction to the charges. In spite of the long delays, the record discloses no real impairment of Mills' ability to defend himself because of his late trial. Mills did not dispute

2. The district court's order of August 26, 1968, denying the petition stated:
    The Court is not in receipt of a certificate of any nature or kind indicating that the defendant is competent to stand trial. No alternative procedure under the provisions of Section 4247 or Section 4248, Title 18, United States Code, has been submitted to this Court. The moment this Court receives information that the defendant is mentally competent to stand trial, he at that time is entitled to trial.

the facts concerning the bank robbery, perhaps because the trial court admitted his confession into evidence (discussed in part II of this opinion), but he denied any criminal responsibility for its commission. He could point to no psychosis to support an insanity claim in defense of the charges as initially brought in 1958. The development of a full-blown psychosis occurred later in 1959, upon his learning of the death of his father. Mills' medical history was well-documented and not impaired by age. See *Mills* (I), *supra*, 430 F.2d 526. The record discloses no prejudice to Mills in presenting his insanity defense, notwithstanding the delay. Cf. *Ewell, supra*, 383 U.S. 116, 86 S.Ct. 773, and *Hodges, supra*, 408 F.2d 543.

We do, however, find it necessary to further examine Mills' claim of oppressive incarceration. Initially, we note that a person assigned to the Federal Medical Center suffers incarceration. At Mills' 1966 hearing, Dr. Bushman, a psychiatrist at the Center, described this medical facility as "a hospital—technically it is called a hospital, but it's more or less a prison-type surroundings." We have previously noted the Center's status as a prison. Garcia v. Steele, 193 F.2d 276, 278 (8th Cir. 1951). Cf. Jones v. Harris, 339 F.2d 585, 586 (8th Cir. 1964); Rosheisen v. Steele, 193 F.2d 273, 275 (8th Cir. 1951); Jones v. Pescor, 169 F.2d 853, 856 (8th Cir. 1948).

The incarceration of a person within the Federal Medical Center for several years raises a serious question of oppressive incarceration contrary to the protections afforded by the speedy trial provisions of the Sixth Amendment, particularly when the crime charged carries a likely penalty of shorter duration than such confinement. The instant case, however, presents a different situation. Mills cannot successfully urge that he was oppressed by time spent in the Medical Center awaiting trial on the bank robbery charges for two reasons: (1) during the period in question he completed serving his ten-year sentence for the escape charges (see *Mills* (I), *supra*, 430 F.2d 526), plus service of a three-year sentence on an unrelated charge imposed by the United States District Court for the District of Nevada; and (2) the district court, in imposing the sentence in this case, generously gave Mills full credit for all time previously spent in custody.

In reviewing the record on this appeal, we have noted Judge Hanson's careful concern to protect Mills' constitutional right to a fair trial. We will not fault the district judge for meticulous concern that Mills' competency be clearly established before trying him. Due process considerations required the district judge to exercise this concern. Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).

Finding neither oppressive incarceration, anxiety and concern relating to the accusation nor any impairment in Mills' ability to defend against the charge, and applying the standard enunciated in *Ewell, supra*, 383 U.S. 116, 86 S.Ct. 773, that the right to a speedy trial is "necessarily relative" to the circumstances, we reject defendant's claim on this issue. See *Ewell, supra*, 383 U.S. at 120, 86 S.Ct. 773; *Hodges, supra*, 408 F.2d at 550.

Our comments relating to the constitutional issue of a speedy trial also serve to support our holding that the trial court acted within its discretion under Rule 48(b), Fed.R.Crim.P., in denying defendant's motion to dismiss for unnecessary delay in bringing him to trial. See *Hodges, supra*, 408 F.2d at 551.

## II.

We find little of substance in the record to support Mills' claim that the trial court erred in its rulings on evidentiary matters. Resolution of these issues requires but brief comment. The trial court conducted a thorough hearing on voluntariness as required by Jackson v.

Denno[3] prior to ruling that Mills' statements to FBI agents following his apprehension were admissible into evidence. We have canvassed the record and find uncontradicted evidentiary support for the district court's ruling that Mills spoke voluntarily after being properly advised of his constitutional rights.

Mills also urges, for the first time on this appeal, that these statements should have been excluded because of delay in bringing him before a commissioner in violation of Fed.R. Crim.P. 5(a) and the teachings of Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). While these contentions, urged for the first time on appeal, are not properly before us, United States v. Mooney, 417 F.2d 936 (8th Cir. 1969), cert. denied, 397 U.S. 1029, 90 S.Ct. 1280, 25 L.Ed.2d 541 (1970), we can discern no violation of Mallory or Rule 5(a). Arrested after Midnight, Mills could not conveniently be taken to a magistrate at that time, but appeared before the United States Commissioner the following morning during business hours. We also think it significant that Mills signed a written statement acknowledging his complicity in the bank robbery two days following his appearance before the magistrate. We note, too, that the testimony established, without contradiction, that the FBI agent, in accordance with its policy,[4] carefully warned Mills concerning his rights. These facts demonstrate that Mills spoke voluntarily following advice concerning his rights and the delay, necessary in this case, in bringing him before a magistrate in no way prejudiced him. See Holt v. United States, 280 F. 2d 273 (8th Cir. 1960).

Similarly, we find no merit in Mills' claim that the officers obtained evidence through an unlawful search and seizure of his automobile subsequent to the offi-

cers' apprehension of Mills and his accomplice following a high-speed chase. Without detailing the facts involved here, we note their remarkable similarity to those considered by the Supreme Court in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (June 22, 1970), and that decision governs our holding on this issue.

Appellant also challenges the in-court identification made by the bank president and his wife. The Harts, who were threatened, bound and gagged while held captive by Mills and his accomplice, had ample opportunity over a period of several hours to identify and recognize Mills as one of the persons who gained entrance into their home. Mills claims that such in-court identification was tainted by unconstitutional pretrial identification procedures. This claim lacks any merit. Even though Mills moved to suppress the identification evidence prior to trial, he failed to offer any evidence in support of this motion and raised no objection during the trial to the introduction of the Harts' identification testimony. This claim, therefore, raises no issue for our consideration on appeal. Mooney, supra, 417 F.2d 936. Further, even if we accept Mills' contention that he and his accomplice were subjected to lineup procedures without counsel contrary to the procedures mandated for out-of-court identification in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), these rules do not apply retroactively. Stovall v. Denno, 388 U.S. 293, 296, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1967). Judging the in-court identification by the "totality of circumstances" test, the standard applied to lineups prior to June 12, 1967, Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969), and Sim-

3. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

4. In Miranda v. Arizona, 384 U.S. 436, 483–486, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court takes note of the fact that the FBI had followed the practice of advising defendants concerning their constitutional rights long before the *Miranda* decision.

mons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the record establishes no substantial likelihood of misidentification. See Searles v. Minnesota, 428 F.2d 1188 (8th Cir., July 14, 1970); Gallagher v. United States, 406 F.2d 102 (8th Cir.), cert. denied, 395 U.S. 968, 89 S.Ct. 2117, 23 L.Ed.2d 756 (1969); Holland v. Nebraska, 416 F.2d 1007 (8th Cir. 1969); cf. United States v. Ranciglio, 429 F.2d 228 (8th Cir., July 22, 1970).

■■■ Mills further urges that two psychiatrists called by the government testified to Mills' sanity at the time of the bank robbery without any foundational basis. This claim borders on the frivolous since both witnesses, in their capacity as prison psychiatrists, had examined, evaluated or treated Mills during his incarceration. Dr. Baker evaluated Mills for the first time at Leavenworth Penitentiary in November of 1958 and saw him on subsequent occasions. Dr. Whitsell, a consulting psychiatrist at Alcatraz Penitentiary, diagnosed Mills' acute psychotic condition. Both physicians offered an opinion predicated upon personal observation of Mills' mental condition at various times subsequent to the robbery, as well as information concerning Mills' personal and medical history. The trial court properly admitted the opinion evidence. See Mason v. United States, 402 F.2d 732 (8th Cir. 1968), cert. denied, 394 U S. 950, 89 S.Ct. 1288, 22 L.Ed.2d 484 (1969); Iyotte v. United States, 402 F.2d 698 (8th Cir. 1968), cert. denied, 394 U.S. 936, 89 S.Ct. 1214, 22 L.Ed.2d 468 (1969).

### III.

■■■ Finally, we reject appellant's challenge to the trial court's jury instruction upon the issue of Mill's criminal responsibility for his acts. The trial court's instructions on this issue conformed with the test for insanity currently used in this circuit as enunciated in Pope v. United States, 372 F.2d 710, 735–736 (8th Cir. 1967) (en banc),

vacated on other grounds, 392 U.S. 651, 88 S.Ct. 2145, 20 L.Ed.2d 1317 (1968), and approved in Alexander v. United States, 380 F.2d 33 (8th Cir. 1967). The trial court instructed the jury in language virtually identical to that approved in Feguer v. United States, 302 F.2d 214 (8th Cir.), cert. denied, 371 U.S. 872, 83 S.Ct. 123, 9 L.Ed.2d 110 (1962). We decline appellant's invitation in this case to modify the rule enunciated in Pope by adopting the "substantial capacity" test contained in § 4.01 of the American Law Institute Model Penal Code, which provides:

(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity either to appreciate the criminality [wrongfulness] of his conduct or to conform his conduct to the requirements of law.

(2) As used in this Article, the terms, 'mental disease or defect' do not include an abnormality manifested only by repeated criminal or otherwise anti-social conduct. A.L.I., Model Penal Code § 4.01 (Final Draft, 1962).

We do not construe Pope as prohibiting, in appropriate cases, use of the A.L.I. test for insanity, and we reiterate Judge Blackmun's comment in Pope that:

\* \* \* we state that we expect a trial judge, in a case involving criminal responsibility, to be free in his admission of all possibly relevant evidence, to be imaginative in his charge, and to give appropriate and particular stress to the requirements of cognition, volition and capacity to control, rather than to be content with the bare bones of a traditional charge, even though it has been specifically approved by appellate opinion in the past. 372 F. 2d at 736.

The trial court in this case freely admitted all evidence which appeared relevant and in his charge embraced the "essential and critical constituents of

legal sanity", *Pope, supra,* 372 F.2d at 736, and we consider this charge legally sufficient under these circumstances.[5]

Affirmed.

5. We note that two other circuits now join those jurisdictions adopting the A.L. I. test or variation thereof as a mandatory requirement in measuring criminal respon-sibility. Wade v. United States, 426 F.2d 64 (9th Cir. 1970) *(en banc)* ; Blake v. United States, 407 F.2d 908 (5th Cir. 1969) *(en banc)*.