**UNITED STATES of America**

v.

**Robert T. DALE et al., Defendants.**

**No. 74 Cr. 42 (HFW).**

United States District Court,
S. D. New York.

Aug. 31, 1976.

---

Robert J. Fiske, Jr., U. S. Atty., Southern District of New York, New York City, for

the Government; by John W. Timbers, New York City, of counsel.

Joseph J. Marcheso, New York City, for defendant Dr. Robert T. Dale.

John H. Doyle, III, New York City, for defendant Lily Farley Ross Dale.

WERKER, District Judge.

The defendants Dr. Robert T. Dale and his wife Lily Farley Ross Dale were originally indicted for income tax evasion in November 1973. This indictment was superseded in January 1974 by the pending indictment which alleges essentially the same offense.

The proceedings against the defendants were interrupted and suspended on April 24, 1974, when Dr. Dale attempted suicide. In three court-ordered examinations which followed, Dr. Dale was determined to be incompetent to assist in his own defense and to be suffering from severe psychiatric illness. His condition has not improved in the more than two years since the suicide attempt.

Consequently, Dr. Dale has moved this court to dismiss the indictment in the interests of justice pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, his right to a speedy trial, and due process of law. Dr. Dale bases his denial of due process claim on the contention that the pendency of the indictment is cruel and unusual punishment in that it contributes to his deteriorating mental condition and to the likelihood he will commit suicide.

The Government opposes Dr. Dale's motion and has moved to sever the charges against Dr. Dale in order to allow the proceedings to resume as to Mrs. Dale. The court will first consider Dr. Dale's motion to dismiss the indictment.

### A

■ In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court outlined the balancing process to be used to determine whether a defendant's right to a speedy trial has been denied. The process requires the considera-

tion of four factors: length of delay, reason for delay, defendant's assertion of his speedy trial rights, and prejudice to the defendant.

■ Courts assess the actual delay itself by considering the surrounding circumstances. In *United States v. Dunn*, 148 U.S.App.D.C. 91, 459 F.2d 1115, 1117 (1972), a period as short as 18½ months was held to be unduly long when 440 days of the delay were directly attributable to the Government and the delay was "unexplainable and unjustifiable" in the view of the court. On the other hand, a six-year delay has been held not to be violative of the defendant's speedy trial rights where the delay resulted from the cumulative effect of a congested calendar, a co-defendant's disappearance, the failure of the defendant to appear for trial, the failure of the Government to press for prosecution and the absence of any effort on the defendant's part to request a speedy trial or to object to the delay. *United States v. Saglimbene*, 471 F.2d 16 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2146, 36 L.Ed.2d 686 (1973). In addition, the court found that the defendant had suffered no substantial prejudice as a result of the delay. The delay in the case at bar, which is 31 months as measured from the November 1973 indictment, must be examined in light of the particular circumstances of this case to determine whether the indictment must be dismissed.

■ The disruption in the instant case is due primarily to Dr. Dale's mental and emotional condition and his incompetency to stand trial. Delays attributable primarily to a defendant cannot be considered in determining whether or not his right to a speedy trial has been violated. *United States v. Stribling*, 469 F.2d 443 (6th Cir. 1972), *cert. denied*, 410 U.S. 957, 93 S.Ct. 1432, 35 L.Ed.2d 691 (1973); *United States v. Lustman*, 258 F.2d 475, 477 (2d Cir.), *cert. denied*, 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958). More specifically, courts have held that delays caused by a defendant's mental inability to stand trial or delays necessitated by a psychiatric examination

required to determine a defendant's competency to stand trial are not to be considered in deciding whether a defendant's right to a speedy trial has been abused. *United States v. Smalls*, 438 F.2d 711 (2d Cir.), *cert. denied*. 403 U.S. 933, 91 S.Ct. 2261, 29 L.Ed.2d 712 (1971); *United States ex rel. Daniels v. Johnston*, 328 F.Supp. 100 (S.D. N.Y.1971); *accord, United States v. Mills*, 434 F.2d 266 (8th Cir. 1970), *cert. denied*, 401 U.S. 925, 91 S.Ct. 908, 27 L.Ed.2d 828 (1971); *United States v. Cartano*, 420 F.2d 362 (1st Cir.), *cert. denied*, 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671 (1970); *Howard v. United States*, 261 F.2d 729 (5th Cir. 1958).

The defendant in *Smalls* claimed his sixth amendment right to a speedy trial had been violated by a 5½-year delay. The court, however, held that the three years during which the defendant had been undergoing treatment in a state mental hospital for paranoid schizophrenia should not be included in determining the propriety of the delay. The court further held that the remaining 2½ years did not constitute an undue delay in view of the circumstances and the absence of any showing of prejudice to the defendant.

In *United States ex rel. Daniels v. Johnston, supra,* a defendant committed to a state mental hospital petitioned for writ of habeas corpus on several grounds, one of which was a claim that an 8½-year delay from indictment to the filing of the habeas corpus petition was a violation of his speedy trial rights. The court, while granting the writ on other grounds, held that the petitioner's sixth amendment right had not been violated because a "delay in trial occasioned by mental incompetence of a defendant does not deprive the defendant of his Sixth Amendment right to a speedy trial." *United States ex rel. Daniels v. Johnston, supra* at 110.

█ Accordingly, the delay in the instant case caused by Dr. Dale's mental incompetency to stand trial should not be considered in deciding whether his speedy trial rights have been violated. The proceedings were halted on April 24, 1974 when Dr. Dale

attempted suicide; since then no further progress has been made. Thus 28 of the 33 months since Dr. Dale's indictment are directly attributable to his current condition. There is a complete absence of any showing that any part of the remaining five-month period resulted from purposeful or oppressive governmental action. *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); *United States v. Smalls, supra* at 713. At least part of this period was consumed by pre-trial procedures. Such a short delay cannot, therefore, be deemed violative of Dr. Dale's sixth amendment rights.

This conclusion is further substantiated by the failure of the defendant to assert his right to a speedy trial. Prior to this motion, Dr. Dale made no demand for an immediate trial. In *Barker*, the Supreme Court held that although a failure to demand a speedy trial is not a waiver of that right, a defendant does have the responsibility to assert it. The failure to do so is to be considered in the balancing process to determine whether one's right to a speedy trial has been violated.

The fourth consideration is whether any prejudice to the defendant has resulted from the delay. Dr. Dale has not made any claims that his defense has been impaired by the delay, nor has he suffered from any pre-trial incarceration. He has contended, however, that he has suffered prejudice in the form of pre-trial anxiety and stress caused by the pendency of this indictment. In his brief he cites several cases wherein the indictments were dismissed because undue delay in going to trial exacerbated the deteriorating health of the defendants. *United States v. Calloway*, 164 U.S.App. D.C. 204, 505 F.2d 311 (1974); *United States v. Dunn*, 148 U.S.App.D.C. 91, 459 F.2d 1115 (1972); *United States v. Baron*, 336 F.Supp. 303 (S.D.N.Y.1971); *United States v. Roberts*, 293 F.Supp. 195 (S.D.N.Y.1968); *In re Provoo*, 17 F.R.D. 183 (D.Md.), *aff'd per curiam*, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955). These cases are distinguishable from the instant case in that the delays were clearly caused by government prosecu-

tors or other government agencies, whereas the delay in the instant case is due to the defendant himself.

The delay in *Baron* resulted from the Government's failure to proceed expeditiously. The facts of that case, along with the facts of ten other indictments, presented "a novel question of law" for which the Government sought an answer. However, only one Assistant United States Attorney was assigned to prosecute all eleven indictments, thus resulting in what the court felt was "purposeful" delay which did not justify denying the defendant his right to a speedy trial. In *Roberts* the court deemed the delay of five years from indictment (10 years from the commission of the alleged acts) to be "unreasonable," since it was caused simply by the Government's failure to place the case on its calendar for five years from the time of the indictment.

In this case there has been no showing of "purposeful" or "unreasonable" delay. In fact, the delay has been necessary to ensure that the defendant would not be subjected to the stress and strain of a trial. Moreover, it has been required by law since a defendant who is convicted while mentally incompetent to stand trial is deprived of due process. *United States v. Knohl,* 379 F.2d 427 (2d Cir.), *cert. denied,* 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967); *United States ex rel. Rizzi v. Follette,* 367 F.2d 559 (2d Cir. 1966).

In summary, a balancing of the factors and circumstances involved in this case leads the court to conclude that there has been no undue or inappropriate delay. Consequently, Dr. Dale's right to a speedy trial has not been violated. In view of this conclusion, there is no basis for the proposition that his due process rights have been violated by the pendency of this indictment merely because of the mental distress caused thereby.

The defendant Dr. Dale's motion to dismiss the indictment is denied.

### B

The Government has moved for an order severing the charges against Dr. Dale to enable it to proceed to trial against Mrs. Dale. Mrs. Dale, arguing that her indictment arises principally from alleged activities of her husband and that he would provide indispensable support in her defense, opposes this motion. Mrs. Dale also contends that it would be inherently unfair to sever and to allow the Government to proceed against her alone because of her subsidiary role in the alleged activities.

In deciding this motion, the court must consider that the indictment against these defendants has been pending since 1973; no visible progress has been made in this case for more than two years, since April 1974. Furthermore, there has been no indication that Dr. Dale will be able to stand trial in the near future. It was as a result of this very delay that he moved for dismissal of the indictment.

*United States v. Arcuri,* 405 F.2d 691 (2d Cir. 1968), *cert. denied,* 395 U.S. 913, 89 S.Ct. 1760, 23 L.Ed.2d 227 (1969), involved a factual situation very similar to the one at bar. There three defendants were charged with dealing in counterfeit money. One defendant, Mrs. Schwartz, was allegedly the saleslady for counterfeit bills which she obtained by phoning her sources of supply, Arcuri and Cimei who were the other two defendants. Undercover agents who maintained surveillance over the operation so testified. At the time of trial, Mrs. Schwartz was a patient at Creedmoore State Hospital, a mental institution; in the interests of a speedy trial her case was severed over the objection of the remaining two defendants. At trial, Mrs. Schwartz appeared under subpoena accompanied by a psychiatrist, a nurse and a lawyer. The doctor testified that "she was 'sufficiently capable of understanding so that she [could] answer in an intelligent and effective way,' and would 'understand the nature of the witness' oath and the nature of these proceedings.'" 405 F.2d at 695. Mrs. Schwartz, in response to the defense's questions, asserted her fifth amendment privilege which the judge sustained. The Second Circuit held that even if the doctor

had testified that Mrs. Schwartz was in fact incompetent, the defendants would remain in the same position since her testimony would still be unavailable. The court affirmed the convictions of Arcuri and Cimei obtained after Mrs. Schwartz' case had been severed.

Also, in *United States v. Bronson,* 145 F.2d 939 (2d Cir. 1944), the court upheld a severance where the case of one of the defendants was severed because he could not be released from his employment in a mine in Canada which was important to the war effort. One of the remaining defendants objected on the ground that he was denied the testimony of the severed party as a witness. The court overruled the objection on the ground that the defendant had no "recognizable legal interest in being tried with another, accused with him." 145 F.2d at 943.

 The decision on a motion to sever is addressed to the sound discretion of the trial judge. *Bernstein v. Travia,* 495 F.2d 1180 (2d Cir. 1974). Considering the delay to date, it is imperative that this case proceed as quickly as possible and that a trial date be set for the earliest convenient date, in the interests of a speedy trial. Mrs. Dale has shown no possible benefit to herself by additional delay. It is not clear at this point in time whether Dr. Dale will ever be sufficiently competent to testify on his wife's behalf. If he is, it is equally unclear whether he will be willing to so testify. Although Mrs. Dale has the right to call him to the stand, her husband may refuse to testify. *United States v. Carella,* 411 F.2d 729, 731 (2d Cir.), *cert. denied,* 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed.2d 112 (1969). Even if his case is severed, it would infringe his fifth amendment rights to call him to the stand and require him to assert his fifth amendment privilege before the jury. *United States v. Housing Foundation of America,* 176 F.2d 665 (3d Cir. 1949).

The delay in the instant case dictates that severance should be granted, there having been no showing of serious prejudice to Mrs. Dale. If the severance motion is not granted, Mrs. Dale's trial and her possible vindication will be delayed indefinitely.

With respect to the additional argument that severance is unfair in view of Mrs. Dale's subsidiary role and lesser culpability, the court concludes that this argument is unfounded. Since the indictment charges her with a crime, she must be tried. And if prosecution whatever the eventual result, is hampered because of Dr. Dale's incompetence to be tried, severance should be allowed for Mrs. Dale's own predicament to be resolved.

For the above-mentioned reasons, the defendant Dr. Robert T. Dale's motion to dismiss the indictment is denied, and the Government's motion to sever is granted.

SO ORDERED.